IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ROY SMITH,                              )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )          No. 13-161C
                                        )          (Judge Wolski)
THE UNITED STATES,                      )
                                        )
          Defendant.                    )

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE
TO DEFENDANT'S MOTION FOR A PROTECTIVE ORDER

Defendant, the United States, respectfully submits this reply to the response to our motion for a protective order, filed by plaintiff, Roy Smith, on August 14, 2014 (Pl. Br.).

ARGUMENT

I.   A Court Order, "Good Cause," And Relevancy To The Action's Subject Matter Are Necessary Before Mr. Smith May Obtain Discovery About Putative Class Members

As we explained in our opening brief, there are two standards for the scope of discovery in proceedings before this Court.  First, parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense." Rule 26(b)(1) of the Rules of the United States Court of Federal Claims (RCFC).  Second, "[*f*]*or good cause*, the [C]ourt may *order* discovery of any matter relevant to the subject matter involved in the action." *Id.* (emphasis added); *see also Estate of Rubinstein v. United States*, 96 Fed. Cl. 640, 646 n.4 (2011).

Putative members of a Fair Labor Standards Act (FLSA) collective action are not "parties" until they opt in. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff . . . unless he gives his consent in writing to become such a party and such consent is filed in the court . . . ."); *cf. United States v. Cook*, 795 F.2d 987, 994 (Fed. Cir. 1986) (it is an advisory opinion to toll statute of limitations for persons who have not yet opted in).  Therefore, Mr. Smith may not

obtain discovery related to putative class members until the Court issues an order authorizing that discovery, *after* Mr. Smith demonstrates good cause, as well as relevancy.  RCFC 26(b)(1).

II.    Mr. Smith Has Not Demonstrated "Good Cause" For Nationwide Discovery Related To Certification Of A Class Action

Mr. Smith argues that he needs nationwide discovery about putative class members, including personal contact information, to meet the requirements of RCFC 23.  Pl. Br. at 3, 6. Mr. Smith's desire to certify a class action is not "good cause" for discovery because Mr. Smith's complaint fails to allege adequate facts, it is inappropriate to seek contact information before the Court authorizes notice, and Mr. Smith has yet to take advantage of the Court's order authorizing notice to a limited group.

A.    There Is Not "Good Cause" For Nationwide Discovery Related To Class Certification When The Complaint Fails To Allege Adequate Facts In Support Of The Class Allegations

"Good cause" does not exist for nationwide discovery related to class certification when the allegations in the complaint are inadequate.  RCFC 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  As the United States District Court explained when dismissing collective-action allegations in *Smith v. Lyons, Doughty & Veldhuius, P.C.*,:

> [Plaintiff] asserts that dismissal of the class claims . . . is premature because he has not yet had discovery, which he surmises will reveal facts indicating the propriety of class action treatment.  This argument misses a substantial point about pleading requirements and the purpose of discovery.  To state a viable claim, a plaintiff must make factual allegations that are enough to raise a right to relief above the speculative level on the assumption that all of the Complaint's allegations are true (even if doubtful in fact).  The purpose of discovery is to uncover evidence of the facts pleaded in the Complaint, not to find a cause of action. . . . Discovery should not serve as a fishing expedition during which Plaintiff searches for evidence in support of facts he has not yet pleaded.

*Smith v. Lyons, Doughty & Veldhuius, P.C.*, No. 07-5139, 2008 WL 2885887 at *5 (D.N.J. July

23, 2008) (internal quotations and citations omitted).  The District Court provided similar

reasoning when dismissing collective-action allegations in *Hodczak v. Latrobe Specialty Steel*

*Co.*:

> [P]laintiffs' argument that . . . they have not conducted discovery
> on the issue . . . is misplaced.  While discovery may be
> appropriate in certain cases prior to the notice phase . . . that does
> not relieve plaintiffs of their obligation of filing a properly pled
> complaint in the first instance demonstrating that they are entitled
> to that discovery.

*Hodczak v. Latrobe Specialty Steel Co.*, No. 08-649, 2009 WL 911311, at *8-10 (W.D. Pa. Mar.

31, 2009).

Here, as discussed in our recent motion for partial dismissal, the complaint's sparse

allegations related to class certification are insufficient to satisfy RCFC 8 or RCFC 23.  *Compare*

Complaint *with Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007); *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013) (affirming dismissal of

FLSA claim); *Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012) (affirming dismissal of

FLSA claim); *Nicholas v. CMRE Fin. Servs., Inc.*, No. 08-4857 (JLL), 2009 WL 1652275, at *4

(D.N.J. June 11, 2009) ("After *Twombly*, courts in this circuit have found that class allegations

must also comply with Rule 8(a) in order to proceed to class discovery."); *Eager v. Credit*

*Bureau Collection Servs., Inc.*, Nos. 1:13-CV-30, 84, 173, and 261, 2014 WL 3534949, at *8

(W.D. Mich. July 16, 2014) ("even in the class action context, plaintiffs must still satisfy

minimal pleading requirements dictated by Rule 23(b) and . . . conclusory allegations will not

suffice"); *Dyer v. Lara's Trucks, Inc.*, No. 1:12–CV–1785–TWT, 2013 WL 609307, at *2-5

(N.D. Ga. Feb. 19, 2013) (dismissing FLSA collective-action allegations); *Creech v. Holiday*

*CVS, LLC*, No. 11-46-BAJ-DLD, 2012 WL 4483384, at *3 (M.D. La. Sept. 28, 2012)

(dismissing FLSA collective-action allegations); *St. Croix v. Genentech, Inc.*, No. 8:12–cv–891–T–33EAJ; 2012 WL 2376668, at *3 (M.D. Fla. June 22, 2012) (dismissing FLSA collective-action allegations); *Pickering v. Lorillard Tobacco Co., Inc.*, No. 2:10-CV-633-WKW[WO], 2011 WL 111730, at *2 (M.D. Ala. Jan. 13, 2011) (dismissing FLSA collective-action allegations); *Nieman v. Nationwide Mut. Ins. Co.*, No. 09-3304, 2010 WL 744582, at *1 (C.D. Ill. Feb. 26, 2010) ("the plaintiff in a would-be class action lawsuit bears the burden of *alleging* and proving that the proposed class satisfies . . . Rule 23(a).") (emphasis added); *Benoit v. Ocwen Financial Corp.*, 960 F. Supp. 287, 289 (S.D. Fla. 1997) (class-action complaint failed to comply with Rule 8); *Stroud v. Seminole Tribe of Florida*, 574 F. Supp. 1043, 1045 n.1 (S.D. Fla. 1983) (dismissing class allegations for failure to satisfy Rule 23(a)); 7B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1798 (3d. ed.) ("for an action to go forward under Rule 23, the pleader must set forth sufficient allegations" to show that the requirements of Rule 23 are satisfied).

Furthermore, if Mr. Smith were to try to certify a class action, the Court's review of that issue might be limited by the allegations in the complaint.  *See Anderson v. U.S. Dep't of Housing and Urban Dev.*, 554 F.3d 525, 529 (5th Cir. 2008) ("we hold that the district court abused its discretion by certifying a class based on claims not pleaded in the complaint"); *In re Canon Cameras*, 237 F.R.D. 357, 358 n.1 (S.D.N.Y. 2006) ("in considering the plaintiffs' instant motion [for class certification], the Court has considered only those factual allegations pled in the Second Amended Complaint."); *Trinidad v. Victaulic Co. of Am.*, No. 85-1962, 1986 WL 276, at *3 (E.D. Pa. Aug. 15, 1986) (proposed subclass needed to be justified by allegations in the complaint).  Therefore, "good cause" does not exist for nationwide discovery related to class certification.

B.     It Is Inappropriate To Seek Contact Information Of Putative Class Members
Before The Court Authorizes Notice

As we explained in our opening brief, it would be inappropriate for Mr. Smith to obtain

contact information for putative class members before the Court authorizes notice.  Otherwise

there would be a "potential for misuse" of the information.  *Hoffmann-La Roche, Inc. v. Sperling*,

493 U.S. 165, 170-71 (1989) (trial courts have a managerial responsibility to assure that joinder

is accomplished properly, and to counter "the potential for misuse of the class device, as by

misleading communications"); *see also Severtson v. Philips Beverage Co.*, 137 F.R.D. 264, 267

(D. Minn. 1991); *Barton v. The Pantry, Inc.*, No. 1:04CV00748, 2006 WL 2568462, at *2

(M.D.N.C. Aug. 31, 2006); *Knutson v. Blue Cross & Blue Shield of Minnesota*, 254 F.R.D. 553,

557 (D. Minn. 2008).  Notice to Mr. Smith's broad group of putative "class members" has not

been authorized, so "good cause" does not exist for discovery of their contact information.

C.     Mr. Smith Has Yet To Take Advantage Of The Court's Order Authorizing Notice

Before putting the Government to the burden of responding to nationwide discovery,

Mr. Smith could see what comes of the Court's recent order authorizing notice to a limited group

of employees.[1]  *See* Order, dated August 11, 2014; *Palmer v. Convergys Corp.*, No. 7:10-CV-

145, 2011 WL 1326183, at *3 (M.D. Ga. April 6, 2011) ("The best solution is . . . Plaintiffs can

receive the contact information for the employees who worked for the same supervisors . . . . The

Plaintiffs can speak with these individuals to determine whether they are similarly situated and

whether they would like to [opt in].  This limited discovery will prevent Plaintiffs from

conducting unwarranted mass solicitations prior to conditional certification.  The limited

discovery will also provide the Plaintiffs the names of potential fact witnesses who may have

---

[1] If the scope of the relevant time period for notice were determined to be three years
prior to the Court's August 11, 2014 order, we anticipate that two or three people would receive
notice.  We are still verifying the relevant information.

information relevant to their claims."). Therefore, "good cause" does not exist for nationwide

discovery related to class certification. *Cf. Adams v. United States*, 21 Cl. Ct. 795, 797 (1990)

("There is no presumption that the court ought to facilitate expansion of the plaintiff group.").

III. <u>Mr. Smith's Desire To Have Others Join This Litigation Is Not A Claim Of Mr. Smith</u>

      Mr. Smith argues that discovery about putative class members relates to "his claim that a

class should be certified," and thus falls within the scope of "party's claim or defense" discovery.

*See* Pl. Br. at 5; RCFC 26(b)(1).

      To the contrary, the only claim currently before the Court for purposes of discovery is

Mr. Smith's individual claim for overtime compensation. *See Knutson*, 254 F.R.D. at 558 n.6;

*Sperling*, 493 U.S. at 179-80 (1989) (Scalia, J., dissenting); *Palmer*, 2011 WL 1326183, at *3;

*Levine v. Gunther Motor Co. of Plantation, Inc.*, No. 10-61812-CIV, 2010 WL 5140590, at *3

(S.D. Fla. Dec. 9, 2010). Thus, Mr. Smith's discovery requests about putative class members are

not within the scope of "party's claim or defense" discovery under RCFC 26(b)(1).

IV.   It Would Be Unduly Burdensome To Provide Contact Information For Numerous
     Putative Class Members So That Mr. Smith Can Take Their Depositions To Demonstrate
     <u>"Willfulness" And Lack Of Good Faith With Respect To Mr. Smith Only</u>

      Mr. Smith argues that contact information for putative class members either does not

require "good cause," or meets that standard, because Mr. Smith could use the contact

information to facilitate depositions about whether the Government lacked good faith and acted

"willfully" with respect to Mr. Smith. *See* Pl. Br. at 5.

      It would be unduly burdensome to collect and provide contact information for this

proffered purpose, for several reasons.

      First, whether other putative class members were misclassified, and whether any

misclassifications were "willful" or in "good faith," might differ on an individual basis. *See* 5

C.F.R. § 551.202 (e) ("the designation . . . must ultimately rest on the duties actually performed"); *Illano v. H&R Block E. Enters.*, No. 09-22531-CV, 2010 WL 9553051, at *4 (S.D. Fla. Nov. 4, 2010) ("this Court would be required to determine, on an individual basis, whether Defendant's actions were willful.").  Thus, it is unclear how the testimony of putative class members would bear on "willfulness" or "good faith" with respect to Mr. Smith.

Second, proving "willfulness" and lack of good faith was obviously not the impetus for Mr. Smith to seek contact information for putative class members.  The discovery requests do not mention "good faith" or "willfulness."  Rather, they focus on the Government's contention that Mr. Smith is not similarly situated to putative class members.  *See, e.g.*, A11[2], ¶ 7 (seeking documents related to the Government's position on class certification); A12, Interrogatory No. 3 (seeking the basis for the Government's position on class certification); *cf.* Pl. Br. at 8 (conclusion focusing on class certification).

Third, Mr. Smith's proffered justification — that he needs to depose numerous "class members" about willfulness and good faith regarding Mr. Smith — ignores the presumptive ten-deposition limit.  *See* RCFC 30(a)(2)(A)(i).  The Government identified 23 employees in our initial disclosures, and we expect that is an adequate pool from which to pick ten.

Furthermore, Mr. Smith is not entitled to discovery to prove "willfulness" because, as discussed in our recent motion for partial dismissal, he has not alleged a valid basis for "willfulness" in the complaint.  The complaint alleges that the Government acted willfully "[a]s a result of the conduct of its officers and agencies."  *See* Complaint, ¶ 13.  This statement is too vague to "unlock the doors of discovery."  *Iqbal*, 556 U.S. at 678; *see, e.g.*, *Jelks v. Newark Cmty. Health Ctrs.*, No. 13-886 (JLL), 2013 WL 6154438, at *3-4 (D.N.J. Nov. 22, 2013);

---

[2] "A__" refers to the appendix attached to our opening brief.

*Rowlett v. Michigan Bell*, No. 1:11-cv-1269, 2013 WL 308881, at *1-2 (W.D. Mich. Jan. 25, 2013); *Morgovsky v. AdBrite, Inc.*, No. C 10-05143 SBA, 2012 WL 1595105, at *5-7 (N.D. Cal. May 4, 2012) (all dismissing claims as time-barred because "willfulness" allegations were insufficient).

Finally, whether the Veterans Canteen Service (VCS) acted "willfully" with respect to Mr. Smith would be relevant for, at most, one week of Mr. Smith's employment. "Willfulness," if proven, allows the statute-of-limitations period for FLSA actions to extend for three years, rather than two. *See* 29 U.S.C. § 255(a). Mr. Smith began work for VCS on February 28, 2011, two years and one week before he filed suit in this Court on March 4, 2013. *See* SA1-10.[3] It would be unduly burdensome to subject the Government to nationwide discovery because Mr. Smith delayed filing his complaint by one week.

Therefore, it would be unduly burdensome to provide contact information for numerous putative class members to facilitate depositions about "good faith" and "willfulness."

V.      To Answer Mr. Smith's Discovery Requests Would Be Unduly Burdensome

Mr. Smith argues that our motion for a protective order should be denied because "the government failed to show 'undue burden or expense.'" Pl. Bt. at 3. To respond to this point, we provide the declaration of Abner Martinez, VCS's National Labor Relations Manager (Martinez Dec.). SA11-16.

As Mr. Martinez explains, VCS's central office does not have immediate access to contact information and time records for most of its employees, including the putative class members. That information is dispersed among approximately 150 local human resources offices of Department of Veterans Affairs (VA) hospitals, in systems that the VCS central office

---

[3] "SA__" refers to the supplemental appendix attached to this brief.

cannot access due to VA's privacy concerns.  Martinez Dec., ¶¶ 16-21.

To collect the requested contact information for all individuals who may have knowledge relevant to the nationwide class action that Mr. Smith desires, *see* Interrogatory No. 2, A12, VCS would have to contact each of those 150 local VA offices and collect information about more than 3,700 people.  Martinez Dec., ¶¶ 16-18.  VCS would likely also have to collect information about former employees from the National Records Center.  *Id.*, ¶ 19.

To answer how hours were recorded for the putative class members, *see* Interrogatory No. 4, A12, VCS would have to collect time records from approximately 72 local VA human resource departments.  Martinez Dec., ¶ 20-21.  To determine whether the time records are accurate, and whether putative class members were permitted to work more than 40 hours a week, *see* Interrogatory No. 4 and Requests for Admission Nos. 3-4, A12-13, VCS would have to conduct an investigation of approximately 72 local offices and interview hundreds of witnesses.  Martinez Dec., ¶¶ 22-23.

VCS does not have a legal department to assist with litigation.  *Id.*, ¶ 13.  VCS might be able to obtain some assistance from a handful VA lawyers, but those lawyers are busy with work for VA and with VCS's Equal Employment Opportunity cases.  *See id.*, ¶ 14.  So, Mr. Martinez would be the person responsible for assisting the Department of Justice with responding to Mr. Smith's discovery requests.  *Id.*, ¶ 15.  Mr. Martinez would also be busy with his official duties, namely administering the contracts for four national unions, and overseeing all disciplinary actions within VCS.  *Id*, ¶ 2.  Therefore, to answer discovery requests about putative class members would be unduly burdensome.

VI.   <u>The Government Does Not Object To Answering Discovery About Mr. Smith</u>

Mr. Smith faults the Government for not agreeing to answer interrogatories and requests

for admission to the extent that they relate to Mr. Smith.  Pl. Br. at 4.  This is somewhat murky because the parties disagree about whether certain requests relate to Mr. Smith's claims, as discussed above.  We do not object to answering discovery requests to the extent they relate to Mr. Smith's claims, as determined by the Court, after the Court rules on this motion and our pending motion for partial dismissal.[4]

<u>CONCLUSION</u>

For these reasons, we respectfully request the Court to issue a protective order suspending the Government's obligation to respond to the first set of discovery requests served by Mr. Smith until 30 days after the Court rules on the Government's pending motion for partial dismissal, decides whether "good cause" and relevancy exists for discovery about putative class members, and sets a schedule for further proceedings.  We would not object to answering Document Requests Nos. 3-6.

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

 /s/ Steven J. Gillingham 
STEVEN J. GILLINGHAM
Assistant Director

---

[4] We do not intend to this brief to constitute an "agreement" that we will waive any objections when responding to any of Mr. Smith's requests.  Also, Mr. Smith asserts that the Government *agreed* that Mr. Smith's discovery requests were validly signed by counsel of record.  Pl. Br. at 2-3.  We wish to state on the record that the Government did not "agree" that Mr. Smith's requests comply with RCFC 26(g)(1).

 /s/ Joshua A. Mandlebaum
JOSHUA A. MANDLEBAUM
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tele: (202) 305–3091
Fax:  (202) 514-8624

August 26, 2014                          Attorneys for Defendant

SUPPLEMENTAL APPENDIX

<u>INDEX TO SUPPLEMENTAL APPENDIX</u>

Time record for Roy Smith ..................................................................................................... A1-10

Declaration of Abner Martinez, dated August 25, 2014 ...................................................... A11-16

```
10H
   SMITH,ROY                    T&L VCS  Telework Ind: None      REDACTED

          Date      TW  Scheduled Tour        Tour Exceptions
      ---------------------------------------------------------------------
   Sun 27-Feb-11       Day Off
   Mon 28-Feb-11       07:00A-03:30P
   Tue  1-Mar-11       07:00A-03:30P
   Wed  2-Mar-11       07:00A-03:30P
   Thu  3-Mar-11       07:00A-03:30P
   Fri  4-Mar-11       07:00A-03:30P
   Sat  5-Mar-11       Day Off
   Sun  6-Mar-11       Day Off
   Mon  7-Mar-11       07:00A-03:30P
   Tue  8-Mar-11       07:00A-03:30P
   Wed  9-Mar-11       07:00A-03:30P
   Thu 10-Mar-11       07:00A-03:30P
   Fri 11-Mar-11       07:00A-03:30P
   Sat 12-Mar-11       Day Off
```

A1

```
10H
   SMITH,ROY                        T&L VCS   Telework Ind: None      REDACTED

        Date      TW  Scheduled Tour         Tour Exceptions
   -------------------------------------------------------------------------
   Sun 13-Mar-11      Day Off
   Mon 14-Mar-11      07:00A-03:30P
   Tue 15-Mar-11      07:00A-03:30P
   Wed 16-Mar-11      07:00A-03:30P
   Thu 17-Mar-11      07:00A-03:30P
   Fri 18-Mar-11      07:00A-03:30P
   Sat 19-Mar-11      Day Off
   Sun 20-Mar-11      Day Off
   Mon 21-Mar-11      07:00A-03:30P
   Tue 22-Mar-11      07:00A-03:30P
   Wed 23-Mar-11      07:00A-03:30P
   Thu 24-Mar-11      07:00A-03:30P
   Fri 25-Mar-11      07:00A-03:30P
   Sat 26-Mar-11      Day Off
```

A2

```
10H
    SMITH,ROY                          T&L VCS   Telework Ind: None      REDACTED

          Date      TW   Scheduled Tour           Tour Exceptions
    ---------------------------------------------------------------------------
    Sun 27-Mar-11        Day Off
    Mon 28-Mar-11        07:00A-03:30P
    Tue 29-Mar-11        07:00A-03:30P
    Wed 30-Mar-11        07:00A-03:30P
    Thu 31-Mar-11        07:00A-03:30P
    Fri  1-Apr-11        07:00A-03:30P
    Sat  2-Apr-11        Day Off
    Sun  3-Apr-11        Day Off
    Mon  4-Apr-11        07:00A-03:30P
    Tue  5-Apr-11        07:00A-03:30P
    Wed  6-Apr-11        07:00A-03:30P
    Thu  7-Apr-11        07:00A-03:30P
    Fri  8-Apr-11        07:00A-03:30P
    Sat  9-Apr-11        Day Off
```

A3

10H

SMITH,ROY                            T&L VCS  Telework Ind: None      **REDACTED**

```
        Date      TW  Scheduled Tour          Tour Exceptions
------------------------------------------------------------------------
Sun 10-Apr-11         Day Off
Mon 11-Apr-11         07:00A-03:30P
Tue 12-Apr-11         07:00A-03:30P
Wed 13-Apr-11         07:00A-03:30P
Thu 14-Apr-11         07:00A-03:30P
Fri 15-Apr-11         07:00A-03:30P
Sat 16-Apr-11         Day Off
Sun 17-Apr-11         Day Off
Mon 18-Apr-11         07:00A-03:30P
Tue 19-Apr-11         07:00A-03:30P
Wed 20-Apr-11         07:00A-03:30P
Thu 21-Apr-11         07:00A-03:30P
Fri 22-Apr-11         07:00A-03:30P
Sat 23-Apr-11         Day Off
```

A4

```
10H
   SMITH,ROY                        T&L VCS  Telework Ind: None    REDACTED

        Date      TW  Scheduled Tour        Tour Exceptions
     ----------------------------------------------------------------------
     Sun 24-Apr-11      Day Off
     Mon 25-Apr-11      07:00A-03:30P
     Tue 26-Apr-11      07:00A-03:30P
     Wed 27-Apr-11      07:00A-03:30P
     Thu 28-Apr-11      07:00A-03:30P
     Fri 29-Apr-11      07:00A-03:30P
     Sat 30-Apr-11      Day Off
     Sun  1-May-11      Day Off
     Mon  2-May-11      07:00A-03:30P
     Tue  3-May-11      07:00A-03:30P
     Wed  4-May-11      07:00A-03:30P
     Thu  5-May-11      07:00A-03:30P
     Fri  6-May-11      07:00A-03:30P
     Sat  7-May-11      Day Off
```

A5

```
10H
   SMITH,ROY                          T&L VCS   Telework Ind: None      REDACTED

        Date     TW  Scheduled Tour          Tour Exceptions
     ------------------------------------------------------------------------
Sun   8-May-11       Day Off
Mon   9-May-11       07:00A-03:30P
Tue  10-May-11       07:00A-03:30P
Wed  11-May-11       07:00A-03:30P
Thu  12-May-11       07:00A-03:30P
Fri  13-May-11       07:00A-03:30P
Sat  14-May-11       Day Off
Sun  15-May-11       Day Off
Mon  16-May-11       07:00A-03:30P
Tue  17-May-11       07:00A-03:30P
Wed  18-May-11       07:00A-03:30P
Thu  19-May-11       07:00A-03:30P
Fri  20-May-11       07:00A-03:30P
Sat  21-May-11       Day Off
```

```
10H
    SMITH,ROY                    T&L VCS   Telework Ind: None      REDACTED

        Date      TW   Scheduled Tour        Tour Exceptions
    ------------------------------------------------------------------
    Sun 22-May-11        Day Off
    Mon 23-May-11        07:00A-03:30P
    Tue 24-May-11        07:00A-03:30P
    Wed 25-May-11        07:00A-03:30P
    Thu 26-May-11        07:00A-03:30P        09:00A-03:30P      SL SICK LV
                                              SF71 on file
    Fri 27-May-11        07:00A-03:30P
    Sat 28-May-11        Day Off
    Sun 29-May-11        Day Off
    Mon 30-May-11        07:00A-03:30P        07:00A-03:30P      HX HOL EX
    Tue 31-May-11        07:00A-03:30P
    Wed  1-Jun-11        07:00A-03:30P
    Thu  2-Jun-11        07:00A-03:30P
    Fri  3-Jun-11        07:00A-03:30P
    Sat  4-Jun-11        Day Off
```

```
10H
    SMITH,ROY                        T&L VCS  Telework Ind: None     REDACTED

        Date      TW  Scheduled Tour      Tour Exceptions
    ---------------------------------------------------------------------------
Sun  5-Jun-11       Day Off
Mon  6-Jun-11       07:00A-03:30P
Tue  7-Jun-11       07:00A-03:30P
Wed  8-Jun-11       07:00A-03:30P       07:00A-03:30P      SL SICK LV
                                        SF71 on file

Thu  9-Jun-11       07:00A-03:30P
Fri 10-Jun-11       07:00A-03:30P
Sat 11-Jun-11       Day Off
Sun 12-Jun-11       Day Off
Mon 13-Jun-11       07:00A-03:30P
Tue 14-Jun-11       07:00A-03:30P
Wed 15-Jun-11       07:00A-03:30P
Thu 16-Jun-11       07:00A-03:30P
Fri 17-Jun-11       07:00A-03:30P
Sat 18-Jun-11       Day Off
```

A8

```
10H
   SMITH,ROY                    T&L VCS  Telework Ind: None    REDACTED

         Date      TW  Scheduled Tour        Tour Exceptions
        ------------------------------------------------------------------
Sun 19-Jun-11         Day Off
Mon 20-Jun-11         07:00A-03:30P          07:00A-03:30P    AL ANNUAL LV
                                             SF71 on file
Tue 21-Jun-11         07:00A-03:30P          07:00A-03:30P    AL ANNUAL LV
                                             SF71 on file
Wed 22-Jun-11         07:00A-03:30P
Thu 23-Jun-11         07:00A-03:30P          07:00A-03:30P    AL ANNUAL LV
                                             SF71 on file
Fri 24-Jun-11         07:00A-03:30P          07:00A-03:30P    AL ANNUAL LV
                                             SF71 on file
Sat 25-Jun-11         Day Off
Sun 26-Jun-11         Day Off
Mon 27-Jun-11         07:00A-03:30P          07:00A-03:30P    WP LWOP
                                             AWOL
        no call no show
Tue 28-Jun-11         07:00A-03:30P          07:00A-03:30P    WP LWOP
                                             AWOL
        no call no show
Wed 29-Jun-11         07:00A-03:30P
Thu 30-Jun-11         07:00A-03:30P          07:00A-03:30P    WP LWOP
                                             AWOL
        no call no show
Fri  1-Jul-11         07:00A-03:30P
Sat  2-Jul-11         Day Off
```

```
10H
   SMITH,ROY                      T&L VCS   Telework Ind: None      REDACTED

        Date      TW   Scheduled Tour         Tour Exceptions
   ------------------------------------------------------------------------
Sun  3-Jul-11        Day Off
Mon  4-Jul-11        07:00A-03:30P          07:00A-03:30P    HX HOL EX
Tue  5-Jul-11        07:00A-03:30P          07:00A-03:30P    AA AUTH ABS
          terminated on 7/1/2011             AA Granted by Supr.
Wed  6-Jul-11        07:00A-03:30P          07:00A-03:30P    AA AUTH ABS
          terminated on 7/1/2011             AA Granted by Supr.
Thu  7-Jul-11        07:00A-03:30P          07:00A-03:30P    AA AUTH ABS
          terminated on 7/1/2011             AA Granted by Supr.
Fri  8-Jul-11        07:00A-03:30P          07:00A-03:30P    AA AUTH ABS
          terminated on 7/1/2011             AA Granted by Supr.
Sat  9-Jul-11        Day Off
Sun 10-Jul-11        Day Off
Mon 11-Jul-11        07:00A-03:30P          07:00A-03:30P    AA AUTH ABS
          terminated on 7/1/2011             AA Granted by Supr.
Tue 12-Jul-11        07:00A-03:30P          07:00A-03:30P    AA AUTH ABS
          last day 7/15/2011                 AA Granted by Supr.
Wed 13-Jul-11        07:00A-03:30P          07:00A-03:30P    AA AUTH ABS
          last day 7/15/2011                 AA Granted by Supr.
Thu 14-Jul-11        07:00A-03:30P          07:00A-03:30P    AA AUTH ABS
          last day 7/15/2011                 AA Granted by Supr.
Fri 15-Jul-11        07:00A-03:30P          07:00A-03:30P    AA AUTH ABS
          today is his last day              AA Granted by Supr.
Sat 16-Jul-11        Day Off
```

2 weeks pay

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROY SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 13-161C |
| v. | ) | (Judge Wolski) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF ABNER MARTINEZ

I, Abner Martinez, pursuant to 28 U.S.C. § 1746, hereby declare, under penalty of perjury, that the following statements are true and correct, to the best of my knowledge and belief:

1.      I have been employed by the Veterans Canteen Service (VCS) since 2010.  Before working for VCS, I served in the United States Army as a military officer on active duty for 12.5 years.

2.      Currently, I serve as the National Labor Relations Manager for the entire VCS organization.  I administer contracts with four national unions.  I also oversee all disciplinary actions within VCS with the assistance of one employee relations specialist and local human resources offices.

3.      I have been asked to provide information about VCS, and what VCS would have to do in order to respond to certain discovery requests from the plaintiff in this lawsuit.

4.      VCS's primary function is to provide retail and food services within hospitals operated by the Department of Veterans Affairs (VA).

5.      VCS stores are called canteens.  Canteens are managed by a canteen chief.  Canteen chiefs are assisted in their management duties by assistant canteen chiefs.

1

6.      VCS has two programs for hiring and training new assistant canteen chiefs.  One program hires assistant canteen chief "interns."  Another program hires assistant canteen chief "trainees."  The main difference between interns and trainees is their level and type of experience.  Interns usually have substantial work experience.  Trainees are typically younger than interns, and may have relevant educational training rather than work experience.  The intern program and the trainee program have different pay scales that partially overlap.  Both interns and trainees work at canteens.  The main purpose of the programs is for interns and trainees to receive on-the-job training from an experienced canteen chief.

7.      When Roy Smith worked for VCS, he was an intern rather than a trainee.

8.      VCS has approximately 3,700 employees.  These employees are located all over the country in one of approximately 197 canteens.  The number of canteens is constantly changing, as new canteens are routinely opened and some are closed.

9.      VCS's roughly 197-canteen organization is divided into 12 regions.  These regions are distinct from, and do not overlap with, the 23 Veterans Integrated Service Networks (VISNs) managed by the VA's hospital system.  Some VISNs are spread across multiple VCS regions, and some VCS regions are spread across multiple VISNs.

10.     Each VCS region has a regional manager.  The VCS regional managers spend approximately 90 percent of their time traveling throughout their respective regions.  They do not have dedicated support staff.  Some have offices located inside VA hospitals with available space.  Others work from home when they are not traveling, due to a lack of office space.

11.     VCS has a central office in St. Louis, Missouri, with approximately 300 employees.  The VCS central office provides administrative support to the entire organization.

12.     The central office has the following departments:

       Resources and Support (human resources)
       Marketing
       Retail Operations
       Business Support Group
       Contracting
       Special Order Desk (call center)
       Food Operations
       Vending
       Engineering
       Audit
       Systems Support
       Information Technology

13.     VCS does not have a legal department or a litigation department.

14.     When VCS needs legal support, VCS ordinarily relies on a pool of three VA attorneys. VCS funds a portion of that pool, equivalent to the cost of one attorney.  VCS does not have any attorneys that work exclusively for VCS.  The VA attorneys in the pool devote most of their time to assisting VA.  When assisting VCS rather than VA, the VA attorneys primarily handle Equal Employment Opportunity cases arising from complaints filed by some of VCS's 3,700 employees.

15.     If VCS needs to collect information or documents to respond to discovery requests in this case, I would be the person responsible for assisting the Department of Justice with collecting the information.  I would be assisted by Staffing Supervisor Gina Byrd.  Litigation support is not one of my official job duties.  I am not aware of any VCS employees better suited for this task, as we do not have a legal office.  I would handle this task because I am generally familiar with labor issues, and this case involves a labor dispute.

16.     I have been asked to explain what I would have to do to locate the names and contact information for all people who know facts that might be related to the actual job duties and actual hours worked by VCS interns or trainees, in order to answer Interrogatory No. 2 from Mr. Smith.

17.     VCS interns and trainees interact with the employees at the canteens where they are assigned, as well as with other canteens, and with the central office.  Every person within VCS could potentially know facts relevant to the actual job duties and actual hours worked by VCS interns or trainees within the last three years.  That would include approximately 3,700 people currently working for VCS, plus likely hundreds more who no longer work for VCS.  VCS has a high rate of turnover among its employees.

18.     The VCS central office does not have immediate access to the personal contact information for every current VCS employee, or for former VCS employees.  Information about VCS employees who work in the canteens, rather than the central office, is maintained by the human resources departments of the local VA hospitals with canteens.  VA does not allow the VCS central office to have access to most personnel records maintained by local VA hospitals.  Under the current records system, for the VCS central office to be given access to certain records of current or former VCS employees at a particular VA facility, the VCS central office would also have to be given access to the records of every other employee at that local VA hospital.  The VCS central office would then have access to the records of every person employed at every VA hospital in the country.  Due to concerns about protecting private and sensitive information of VA employees who do not work for VCS, VA does not allow VCS that kind of access.  So, to obtain contact information for at least 3,700 people, I would have to contact approximately 150 local VA medical centers, find the appropriate official at each facility, and ask that person to find the records and send them to me.  I would not have any authority over those VA employees.

19.     Records for people who no longer work for VCS may also be kept at the National Records Center, rather than by local VA human resources departments.  I would have to contact the local VA offices to determine whether those offices have the information or if they have

transferred it to the National Records Center.  Although there is a policy about when to transfer records to the National Records Center, the appropriate paperwork may not always be processed timely because processing paperwork about employees separated from Government service is usually a low priority for human resources departments.

20.     I have been asked to explain what I would have to do to locate the records of hours worked by VCS interns or trainees, in order to determine how the hours were recorded, to answer Interrogatory No. 4 from Mr. Smith.

21.     The VCS central office does not have access to the time records for VCS employees who work in the canteens, for the same reason that we do not have access to personal contact information, discussed above.  Time records are maintained by the human resources departments of local VA hospitals, and VA does not allow the VCS central office to access that information. I would have to contact the appropriate officials at local VA hospitals, who are not under my authority or VCS's authority, and ask them to find the records and send them to me.  I would not have to contact every local VA hospital, because interns have only worked at approximately 72 of the roughly 197 canteens in the country since May 2010.  So I would likely have to contact approximately 72 facilities.

22.     I have been asked to explain what I would have to do to determine whether VCS interns or trainees were permitted or prohibited from working more than 40 hours per week in order to answer Request for Admission No. 3 and Request for Admission No. 4 from Mr. Smith.

23.     I would have to contact approximately 72 canteens that have had interns or trainees since May 2010, and talk to employees at each of them, to conduct a fact investigation.  To do this thoroughly could require talking to hundreds of people.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

_____*8/25/2014*_____
Date

_____
Abner Martinez, National Labor Relations Manager